UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 12-11853

_____
                                                    )
LAWRENCE C. MADOFF,                  )
JUDITH BOXER, and NANCY LANNOM, )
    Plaintiffs                                     )   COMPLAINT
                                                    )
v.                                                  )
                                                    )
TRUSTEES OF TUFTS COLLEGE,        )
TUFTS UNIVERSITY VOLUNTARY     )
RETIREMENT PLAN, and TUFTS       )
UNIVERSITY BASIC RETIREMENT   )
PLAN,                                              )
    Defendants                                  )
_____)

Introduction

1.    This action arises under the Employment Retirement Income Security Act, 29 U.S.C. §1001 et seq.  The claims are based on the failure of Tufts University, acting as the plan administrator for the Tufts University Voluntary Retirement Plan and the Tufts University Basic Retirement Plan (collectively referred to hereinafter as the õPlansö) to pay death benefits under these pension plans to the beneficiaries designated by plan participant Morton C. Madoff upon his death.

Jurisdiction

2.    This Court has jurisdiction over the Plaintiff's claims pursuant to 28 U.S.C. §1331, 29 U.S.C. §1003, and 29 U.S.C. §1132.

Parties

3.    The plaintiff Lawrence C. Madoff  is an individual with a last and usual address at 15 Coolidge Street, Brookline, Massachusetts.

1

4.     The plaintiff Judith Boxer is an individual with a last and usual address at 111 Kendall Road, Lexington, Massachusetts.

5.     The plaintiff Nancy Lannom is an individual with a last and usual address at 116A School Street, Lexington, Massachusetts.

6.     The defendant, Trustees of Tufts College, conducts business as Tufts University ("Tufts") and is a private educational institution organized as a non-profit corporation under the laws of the Commonwealth of Massachusetts with a principal place of business at Medford, Massachusetts.

7.     The defendant Tufts University Basic Retirement Plan is an employee pension plan established by Tufts for the benefit of its employees and governed by the Employee Retirement Income Security Act ("ERISA").

8.     The defendant Tufts University Voluntary Retirement Plan is an employee pension plan established by Tufts for the benefit of its employees and governed by ERISA.

9.     Tufts at all relevant times served as the Plan Administrator for the Tufts University Basic Retirement Plan and for the Tufts University Voluntary Retirement Plan (collectively the "Plans").

Facts

10.     Tufts adopted the Tufts University Basic Retirement Plan on December 31, 1985; and amended and restated the plan on January 1, 2001.

11.     Tufts adopted the Tufts University Voluntary Retirement Plan on or about January 1, 1989; and amended and restated the plan on January 1, 2009.

13.     Tufts designed and has maintained the Plans to qualify under all of the requirements of sections 401(a) and 501(a) of the United States Internal Revenue Code.

14.     Morton A. Madoff ("Dr. Madoff") was a physician who was employed by Tufts beginning in or about July 1957.

15.     At all relevant times, Dr. Madoff was a qualified and vested participant of the Plans.

16.     At all relevant times, Fidelity Investments ("Fidelity") served as Tufts' agent and third party administrator for the Plans.

17.     Under the Plans, if a participant dies before his or her benefit has commenced, the beneficiary or beneficiaries of the participant are entitled to a benefit based upon the participant's plan account balance.

18.     Dr. Madoff married Marjorie Kahn ("Marjorie Madoff") on June 21, 1953.

19.     On or about May 3, 1996, Dr. Madoff designated Marjorie Madoff as his primary beneficiary under the Plans.

20.     Dr. Madoff designated "all my children" as his secondary beneficiary under the Plans.

21.     At all times relevant, Dr. Madoff's children were Lawrence C. Madoff, Judith Boxer and Nancy Lannom.

22.     On November 11, 2001, Marjorie Madoff passed away.

23.     Dr. Madoff left Tufts' employment in or about 2005.

24.     On September 14, 2003, Dr. Madoff married Betty Rubins Solomon ("Betty Solomon Madoff").

25.     On November 26, 2003, within the pre-existing Morton A. Madoff Revocable Trust ("Trust"), Dr. Madoff set aside $700,000.00, and restated the Trust in order to provide Betty Solomon Madoff with monthly income of at least $5,500.00 upon his death.

26.     Under the terms of the restated Trust, the Trust's obligation to pay Betty Solomon Madoff $5,500.00 a month was voided if she claimed any benefit that Dr. Madoff had not specifically provided for her under the Trust.

27.     Dr. Madoff died on June 6, 2009.

28.     As of the date of his death, Dr. Madoff had not yet received any benefit from the Plans.

29.     The terms of the Plans are silent as to the means by which a beneficiary may disclaim an interest in plan benefits following a plan participant's death.

30.     On information and belief, during the times relevant to this action, Tufts had established no summary plan description for the Plans.

31.     On information and belief, during the times relevant to this action, Tufts had established no written claims procedures for the Plans, and had not provided a description of any such claims procedures in any summary plan descriptions.

32.     On or about January 27, 2010, through counsel, Lawrence C. Madoff, Judith Boxer and Nancy Lannom (collectively referred to hereinafter as "Dr. Madoff's Children") submitted to Tufts a claim for death benefits under the Plans, along with certified copies of their father's and mother's death certificates.

33.     In their January 27, 2010 claim, Dr. Madoff's Children informed Tufts of their father's second marriage to Betty Solomon Madoff, and they included a notarized instrument signed by Betty Solomon Madoff on January 6, 2010, that provided in relevant part as follows:

> As the surviving spouse of the participant named above, I understand that I have the right to receive payments from the retirement plan established through Tufts University while my husband was employed there upon the death of my spouse. My said husband died on June 6, 2009. I hereby agree to give up any and all rights which I may otherwise have to receive any benefits under any such retirement plan.
>
> I understand that I do not have to sign this agreement. I am signing this agreement voluntarily. I hereby release Tufts University from all liability for making payments under any such retirement plan(s) based on this authorization.

34. Betty Solomon Madoff's January 6, 2010 notarized instrument includes no language directing the transfer of any interest she possessed in the Plans to any other potential beneficiary.

35. Betty Madoff's January 27, 2010 notarized instrument constituted a qualified disclaimer under section 2518 of Title 26 of the United States Code (the Internal Revenue Code).

36. By means of a February 2, 2010 email, acting on Tufts behalf, Fidelity informed Dr. Madoff's Children to resubmit their claim materials directly to Fidelity and to include two standardized forms entitled a "beneficiary affidavit" and a "beneficiary distribution" form.

37. On or about April 1, 2010, Dr. Madoff's Children resubmitted their claims materials to Fidelity together with the requested two additional forms.

38. On or about April 8, 2010, Fidelity informed Dr. Madoff's Children that it was unable to process their claim; and requested another certified death certificate for Dr. Madoff, a copy of the court appointment of the executor for Dr. Madoff's estate, and a letter authorizing the children's counsel to act on their behalf.

39.     On or about June 2, 2010, Dr. Madoff's children submitted to Fidelity the requested second death certificate, the court appointment, and the agent authorization letter.

40.     On or about June 8, 2010, Fidelity informed Dr. Madoff's Children that it was unable to process their claim; and requested that they submit a copy of their father's marriage certificate.

41.     On or about June 22, 2010, Dr. Madoff's children submitted to Fidelity the requested marriage certificate.

42.     Having received no determination on their January 27, 2010 claim, and having received no explanation for Tufts' delay, on or about July 29, 2010, Dr. Madoff's Children submitted a letter to Fidelity requesting a report on the status of their claim.

43.     On January 25, 2011, over a year after the claim was submitted, Fidelity advised Dr. Madoff's Children by written notice that it was "unable to process your request", asserting that they were "not a valid beneficiary for the [Plans]."

44.     Fidelity's January 25, 2011 notice included no reference to any specific Plans' provisions supporting Tufts' adverse determination, provided no description of the Plans' review procedures, and provided no statement as to the time limits applicable to such procedures.

45.     On or about February 15, 2011, Dr. Madoff's Children renewed their claim and made written demand to Fidelity that it process their claim for benefits within thirty days. The

7

February 15, 2011 letter enclosed another copy of Betty Madoff's January 6, 2010 qualified disclaimer.

46. On March 14, 2011, on behalf of the Plans and Tufts, Fidelity advised Dr. Madoff's Children that it was still reviewing their claim and had not made any decision on the payment of benefits. In relevant part, Fidelity wrote:

> Upon Fidelity's receipt of the marriage certificate in June 2010, Fidelity contacted the plan sponsor for direction regarding the payment of Mr. Madoff's accounts. *Unfortunately, no further action was taken*. On February 18, 2011, Fidelity received the proposed disclaimer from Betty Madoff [actually the disclaimer was first submitted to Tufts on January 27, 2010]. Fidelity has contacted the Plan sponsor, Tufts University for their review and direction indicating that the disclaimer of Betty Madoff is valid. If the Plan sponsor determines that the waiver is valid, Fidelity is also requesting the Plan sponsor to direct the payment of the Plans account balance to Judith Boxer, Nancy Lannom and Lawrence Madoff.
>
> While Fidelity regrets any delay that may have occurred with the beneficiary transfer to Mr. Madoff's children, the Plan accounts can not [sic] be transferred until the Plan sponsor has provided the necessary direction regarding the disclaimer as well as direction to make distributions to Mr. Madoff's children. Fidelity had requested direction from the Plan sponsor, Tufts University and is awaiting their direction upon reviewing the disclaimer. [emphasis added]

47. On or about September 9, 2011, Dr. Madoff's Children write to Fidelity again seeking action on their claim, and proposing in the alternative another approach to bring the matter to a resolution.

48. Neither Fidelity, nor Tufts ever responded to the September 19, 2011 proposal; rather, on or about September 19, 2011, Fidelity merely sent Dr. Madoff's Children another blank beneficiary designation form.

8

49. On October 10, 2011, Betty Solomon Madoff passed away.

50. On or about January 23, 2012, a date some two years after they first submitted their claim, Dr. Madoff's Children wrote to Fidelity again complaining about Fidelity's and Tufts' inaction and seeking a determination of their claim.

51. On information and belief, the Estate of Betty Solomon Madoff made a claim for benefits under the Plans.

52. On behalf of Tufts, Fidelity erroneously distributed $114,720.28 from Dr. Madoff's Plans accounts to the Estate of Betty Solomon Madoff.

53. Having paid out death benefits once to the Estate of Betty Solomon Madoff, Tufts stood to incur an $114,720.28 financial loss from its own assets if it approved Dr. Madoff's Children's claim.

54. On March 9, 2012, Dr. Madoff's Children received an undated letter from Fidelity, acting on Tufts' behalf, advising them that "the transfer of Dr. Madoff's plan was completed on December 20, 2012 to the Estate of Betty Rubin Madoff per procedure."

55. Fidelity's undated notice provided no explanation for Tufts' denial of Dr. Madoff's Children's claim; it included no reference to any specific Plans' provisions supporting Tufts'

adverse determination; it provided no description of the Plans' review procedures, and it did not provide any statement as to the time limits applicable to such procedures.

56.     On April 3, 2011, Dr. Madoff's Children made a written request to Tufts and Fidelity for a number of documents, including the summary plan description for the Plans.

57.     Tufts and Fidelity produced no summary plan descriptions for the Plans to Dr. Madoff's Children.

58.     On or about April 23, 2012, Dr. Madoff's Children appealed Tufts' adverse benefit determination.

59.     On or about June 20, 2012, Tufts issued a decision denying Dr. Madoff's Children's appeal.

60.     Tufts' appeal decision failed to address a number of grounds presented by Dr. Madoff's children, including that the ERISA is based on fundamental principles of trust law such as the rule that the law does not require a person to accept a gift against her will.

CLAIM
WRONGFUL DENIAL OF BENEFITS
29 U.S.C. § 1132 (a)(1)(B)

61.     The Plaintiffs repeat and reallege paragraphs 1 through 60 above and incorporate them herein.

62. Tufts' and the Plans' decision denying death benefits to Dr. Madoff's Children operated to impair, supersede and invalidate 26 U.S.C. §2518 and Massachusetts disclaimer law.

63. In reviewing Dr. Madoff's Children's claim for benefits, Tufts and its agents did not provide summary plan descriptions, did not utilize pre-existing formal claims procedures, applied shifting claims requirements, failed to issue timely decisions, failed to provide explanations for its adverse benefits decisions, failed to provide notice of appeal rights, possessed a serious financial conflict of interest and disregarded grounds offered by the claimants to support their claim.

64. Tufts' and the Plans' decision denying death benefits to Dr. Madoff's Children was in error, wrongful and in violation of law.

65. Tufts' and the Plans' erroneous decision to deny death benefits to Dr. Madoff's Children was arbitrary, capricious, unreasonable, and not made in good faith.

66. As a direct and proximate result of Tufts' and the Plans' actions, Dr. Madoff's Children have sustained damages in the amount of $114,720.28, which on information and belief was the amount of the death benefits due them under the Plans.

67. As a direct and proximate result of Tufts' and the Plans' actions, Dr. Madoff's Children have incurred attorney's fees in an amount not yet fully known to them.

WHEREFORE, the Plaintiffs request judgment against the defendants for:

1. Damages in the sum of $114,720.28, together with interest on that amount;

2. Reasonable attorneys' fees;

3. Costs of suit; and

4. Such other and further relief as the court may deem just and proper.

THE PLAINTIFF HEREBY MAKES A DEMAND FOR A JURY TRIAL ON ALL ISSUES SO TRIABLE.

>Respectfully submitted,
>LAWRENCE C. MADOFF,
>JUDITH BOXER,
>NANCY LANNOM
>Plaintiffs,
>By their attorney,
>
>/s/ Andrew Lawlor
>Andrew Lawlor, BBO#554988
>Fedele and Murray, P.C.
>17 Walpole Street
>Norwood, MA  02062
>(781) 551-5900
>al@fedeleandmurray.com